UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOUEMMA CROMITY,

      Plaintiff,                             CASE NO.: 6:22-cv-924

v.

CITY OF ORLANDO,

      Defendant.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

    The Plaintiff, LOUEMMA CROMITY, by and through her undersigned counsel, hereby files this Complaint against the Defendant, CITY OF ORLANDO, and respectfully alleges and states as follows:

## INTRODUCTION

1.     Plaintiff brings this action against Defendant, her former employer, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and its implementing Regulations and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended (the "FCRA"), § 760.01 *et seq*., Florida Statutes, seeking to recover damages for Defendant's unlawful discrimination on the basis of race and retaliation.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her and altered the terms, conditions, and privileges of her employment because of her race and unlawfully retaliated against her in violation of her rights under Title VII and the FCRA.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343, and 1367. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

4.   This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.   Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000(e)-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Orange County, Florida.

6.   Venue is also proper in this District because the Defendant is subject to personal jurisdiction therein by virtue of its substantial, continuous, and systematic commercial activities in this District and Division. *See* 28 U.S.C. §§ 1391(b)(1); 1391(c)(2).

7.   Plaintiff has hired the undersigned law firm and agreed to pay it a reasonable hourly fee for its services.

8.   Plaintiff requests a jury trial for all issues so triable.

## PARTIES

9.   Plaintiff LOUEMMA CROMITY (hereinafter referred to as "Plaintiff") is an adult African American/Black female individual and resident of Lake County, Florida who, at all times material herein, resided in Lake County, Florida.

10. Plaintiff is a member of the class of individuals protected against harassment and discrimination on the basis of her race (African American/Black) by Title VII and the FCRA.

11. Defendant CITY OF ORLANDO (hereinafter referred to as "Defendant" or "the City") is a Florida municipal corporation.

12. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Orange County, Florida, including its location at 400 South Orange Ave, Orlando, Florida 32801.

13. The City is comprised of several Departments and Offices, including the Office of Business and Financial Services located at 400 South Orange Ave, Orlando, Florida 32801.

14. According to the City of Orlando's website, the Office of Business and Financial Services is responsible for, among other things, safeguarding the assets and managing the financial affairs of the City including revenue collection, real estate, cash disbursements, accounting and financial reporting, investments, debt management and risk management.[1]

15. During the time period from in or around December 2018 until on or around May 17, 2021, Defendant employed Plaintiff as Assistant Chief Procurement Officer in the City's Office of Business and Financial Services located at 400 South Orange Ave, Orlando, Florida 32801 in the City of Orlando, County of Orange, State of Florida.

16. Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a), and the FCRA, § 760.02(6), Florida Statutes. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a), in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions,

---

[1] *See* https://www.orlando.gov/Our-Government/Departments-Offices/OBFS.

partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

17.    Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and § 760.02(7), Florida Statutes. Defendant is an "employer" as defined by 42 U.S.C. § 2000e(b) because Defendant is a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

18.    At all times material herein, Defendant employed five hundred (500) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

19.    At all times material herein, Defendant was, and is, an employer within the meaning of Title VII and the FCRA.

20.    At all times material herein, Plaintiff was an employee of Defendant within the meaning of Title VII and the FCRA.

21.    Thus, Defendant is liable under Title VII and the FCRA for the unlawful discrimination, harassment, hostile work environment, and retaliation to which it subjected Plaintiff as alleged herein.

## EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

22.    Plaintiff has exhausted all administrative prerequisites to file a lawsuit under Title VII and the FCRA.

23.    On November 23, 2020, Plaintiff filed a Charge of Discrimination with the EEOC. On or around June 11, 2021, Plaintiff timely filed a dual 1st Amended Charge of Discrimination

against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") alleging, among other things, discrimination based on race and retaliation.

24. On February 23, 2022, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination against Defendant (EEOC Charge No. 15F202100011).

25. This action is filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue, dated February 23, 2022, from the EEOC in reference to EEOC Charge No. 15F202100011.

26. Further, more than one hundred eighty (180) days have elapsed since the filing of Plaintiff's 1st Amended Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is also entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. *See* §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

27. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

28. In or around December 2018, Defendant hired Plaintiff as an Assistant Chief Procurement Officer in the City's Office of Business and Financial Services located at 400 South Orange Ave, Orlando, Florida 32801.

29. During her period of employment with Defendant, from in or around December 2018 to on or around May 17, 2021, and at all times material herein, Defendant's Chief Procurement Officer, David Billingsley (White) (hereinafter referred to as "Mr. Billingsley"), supervised and managed Plaintiff and her work.

30.    During her period of employment, Plaintiff was also supervised and managed by Defendant's Deputy Chief Financial Officer, Michelle McCrimmon (White) (hereinafter referred to as "Ms. McCrimmon").

31.    During her period of employment, and at all times material herein, Plaintiff was subjected to harassment and discriminatory treatment on the basis of her race by her supervisors and managers, which escalated into an intolerable hostile work environment in or around February 2020 as further alleged herein.

32.    Since in or around February 2020, and prior, Ms. McCrimmon and Mr. Billingsley subjected Plaintiff to consistent harassment and intimidation. Ms. McCrimmon and Mr. Billingsley undermined Plaintiff's authority as a manager in front of her subordinates and continuously subjected Plaintiff to excessive, unwarranted supervision. In addition, Ms. McCrimmon and Mr. Billingsley held Plaintiff to stricter performance standards and applied harsher disciplinary measures as compared to those applied to Defendant's White managers who held similar, comparable positions (including, but not limited to, Chief Procurement Officer Mr. Billingsley, former Assistant Chief Procurement Officer Theodore McCorkle (White),  and Fleet and Facilities Manager David Dunn (White)), all of which created and perpetuated an extremely hostile work environment for Plaintiff.

33.    In or around February 2020, and prior, Ms. McCrimmon made unfounded and unsubstantiated accusations that cast Plaintiff as aggressive, temperamental, hostile, and overbearing (all terms/beliefs historically associated with racially offensive and discriminatory stereotype of Black women) and then told Plaintiff that she needed to look within herself to find her flaws.  In addition, as the Plaintiff tried to share with Ms.

McCrimmon her extensive educational, experience, and professional, Ms. McCrimmon's trivialized and minimized Plaintiff and stated "anyone can put anything on their resume."

34.    Plaintiff reported her concerns regarding Ms. McCrimmon's racially discriminatory comments and harassing behavior to her manager, Mr. Billingsley, and to Employee Relations Specialist Renea Drew (White) (hereinafter referred to as "Ms. Drew") of the City's Labor Relations Department. Plaintiff's complaints of race discrimination and harassment were ignored.

35.    On or around March 6, 2020, Ms. McCrimmon exhibited the same behavior toward Plaintiff during another meeting. Plaintiff went to her manager and HR Employee Relations and repeated her concerns of race discrimination and harassment. However, Plaintiff's concerns were again ignored.

36.    Between March 6, 2020 and March 9, 2020, Defendant notified Ms. McCrimmon that Plaintiff had reported her for racial discrimination and harassment.

37.    After learning of Plaintiff's complaint, on or around March 9, 2020, Ms. McCrimmon requested that Plaintiff be placed on a Performance Improvement Plan ("PIP"), which was put on hold due to the pandemic.  During the Disciplinary Board Hearing, Ms. McCrimmon admitted that she was upset with Plaintiff for making these complaints.

38.    On or around May 13, 2020, Plaintiff placed one of her direct reports, Purchasing Agent III Angela Thomas (White) (hereinafter referred to as "Ms. Thomas"), on a Supervisor Intervention Plan ("SIP"). Mr. Billingsley approved this SIP.

39.    After being placed on her SIP, Ms. Thomas complained to Ms. McCrimmon.

40.    Contrary to Defendant's policy, Plaintiff was never notified of Ms. Thomas's complaint nor was Plaintiff provided the opportunity to address this complaint.

41.     On or around May 29, 2020, Defendant placed Plaintiff on a PIP without providing the supporting documentation of when Defendant first became aware of the items listed in the PIP in violation of its own policies and procedures.

42.     During the time period from on or around June 5, 2020 to August 21, 2020, Plaintiff met with her manager, Mr. Billingsley, several times. During these meetings, Mr. Mr. Billingsley did not raise any issues.

43.     On or around June 15, 2020, Plaintiff requested that Defendant's Chief Financial Officer, Chris McCullion (White) (hereinafter referred to as "Mr. McCullion") provide her with the information that he had received to prove that Plaintiff deserved to be placed on a PIP. Mr. McCullion did not respond to Plaintiff's request.

44.     On or around June 16, 2020, Plaintiff requested that Employee Relations Specialist Ms. Drew provide her with documentation regarding all of the alleged complaints that the Labor Relations Department claimed were made against Plaintiff. Plaintiff requested any information that would help her understand the complaints which they claimed led to the PIP. Defendant's HR Chief Negotiator, Lynne Banks, told Plaintiff to ask Mr. Billingsley for the information.

45.     As directed by HR, Plaintiff then asked Mr. Billingsley to provide her with any and all information and documentation supporting Defendant's claim that employees submitted complaints about Plaintiff. In response, Mr. Billingsley informed Plaintiff that "maybe he did not document".

46.     Mr. Billingsley was unable to provide Plaintiff with any such documentation of employees coming to him or to going to the Labor Relations Department to complain about Plaintiff. Plaintiff was never told that anyone complained about her in 2020 which led to the PIP six

(6) months later and deprived her of the opportunity to address these concerns in real time according to the City's policy.

47.    Plaintiff completed the PIP.

48.    In or around August 2020, Mr. Billingsley individually met with each of the twelve (12) employees who directly reported to Plaintiff.

49.    During these meetings, Mr. Billingsley asked Plaintiff's direct reports if they had any issues with Plaintiff and if Plaintiff was meeting their needs.

50.    After these meetings took place, Mr. Billingsley informed Plaintiff that none of her direct reports had any issues with her and that she was meeting their needs.

51.    In or around October 2020, since she was fully staffed, Plaintiff created an Employee Orientation/Training Program for recent new hires.

52.    One such new hire, Yonney Dominguez (Hispanic) (hereinafter referred to as "Mr. Dominguez") never complained but was condescending and created distractions throughout the training. Mr. Dominguez was on probation and not performing to minimum standards.

53.    In or around September 2020, Plaintiff scheduled a meeting with Mr.  Billingsley and Mr. Dominguez to review Mr. Dominguez's employment (6-month probationary review period).

54.    On or around November 9, 2020, Plaintiff informed Mr. Dominguez that he would need to resume a process, which she had temporarily assigned to another staff member, beginning in January 2021 and that he needed to get caught up on his projects.

55.    On or around November 9, 2020, Mr. Dominguez went to Ms. McCrimmon and she instructed him to go to Labor Relations.

56.    On or around November 13, 2020, Plaintiff met with Employee Relations Specialist Ms. Drew who informed Plaintiff that she was under investigation. Ms. Drew refused to tell Plaintiff who submitted complaints or the reason(s) behind the investigation, which was in violation of the City's policy. During this meeting, Plaintiff informed Ms. Drew, yet again, that she felt she was being discriminated against and was in the process of filing an EEOC Complaint.

57.    During this meeting, Plaintiff informed Ms. Drew and Mr. Billingsley that she was going to seek help with the City's Mayor and file an EEOC complaint. Ms. Drew returned about fifteen (15) minutes later and stated that she told senior management that Plaintiff did not take the news well about being under investigation and was told that she needed to work remotely. In response, Plaintiff stated she was being told to work remotely because she had informed them of her intentions to contact the Mayor and file an EEOC complaint. Ms. Drew then told Plaintiff that she needed to leave.

58.    On or around November 20, 2020, Mr. Billingsley and Ms. Banks met with Plaintiff and effectively terminated her employment – presenting her with a termination memorandum and a draft resignation letter (the option to resign from her position).

59.    On or around November 20, 2020, Defendant subjected Plaintiff to a retaliatory discharge amid trivial, fabricated, and unsubstantiated complaints by a single employee that were not confirmed through the City's investigation.   In addition, Plaintiff was not given the opportunity to address the compliant of the single employee, which again was a violation of City's policy.

60.     In accordance with the City's Policies and Procedures, Plaintiff filed a grievance which was heard by the City's Grievance Adjustment Board, and her wrongful termination was overturned on April 23, 2021.

61.     During this Grievance Adjustment Board hearing, Ms. McCrimmon admitted that she was upset with the Plaintiff for going to the City's HR Employee Relations department to complain about Ms. McCrimmon harassment and discriminatory behavior towards her.

62.     On or around May 7, 2021, after being notified that the Plaintiff's wrongful termination was overturned by the Grievance Adjustment Board, Mr. Billingsley and Ms. McCrimmon imposed a discipline of a three-step demotion, turned the termination into a suspension of six (6) months without pay or benefits, six months' probation, and threatened Plaintiff with immediate termination upon her return.

63.     On or around May 9, 2021, Plaintiff filed a grievance of this decision, which was also ignored.

64.     On or around May 14, 2021, Plaintiff notified Mr. Billingsley that she would not return to the City of Orlando in a non-management role at a heavily reduced compensation rate and that she had grieved the decision because his letter made clear the City's retaliatory conduct would continue unabated. Plaintiff informed him, in accordance with the City's policy, that she filed a grievance of this decision and requested the Step One Meeting over this continued retaliation.

65.     On or around May 17, 2021, after Plaintiff submitted a letter to Mr. Billingsley requesting that the City honor the Grievance Adjustment Board's decision and the remedy sought of reinstatement of her position with full compensation of wages, benefits, and full cost to defend herself, Mr. Billingsley fired Plaintiff. Mr. Billingsley falsely alleged that Plaintiff's

request was a resignation. No such resignation was ever submitted. Plaintiff grieved this decision as well.

66.    The aforementioned discharge and disciplinary measures were also absent the remedial measures, benefit of the doubt, balanced procedural processes afforded to Chief Procurement Officer Mr. Billingsley (White), former Assistant Chief Procurement Officer Theodore McCorkle (White), Fleet, Environmental Manager, Dan Dashtaki (White), and Facilities Manager David Dunn (White), and other White managers who have actually and severely violated laws and policies and/or have had numerous employee complaints filed against them (including sex and race discrimination) but were not subjected to any disciplinary measures.

67.    Defendant has a pattern and practice of discriminating against African American/Black employees with respect to hiring, promotional practices, and terms, conditions, and privileges of employment, in addition to allowing White employees to harass and intimidate African American/Black employees.

68.    Plaintiff's numerous complaints of employment discrimination are the reasons for the Defendant's decisions to place her on a PIP; initially terminate her employment; refuse to abide by and comply with the Grievance Adjustment Board's decisions; violate its own policy;  demote her; and effectively terminate her employment again.

**<u>COUNT I</u>**
**VIOLATION OF TITLE VII/FCRA - RACE DISCRIMINATION**
**Harassment, Hostile Work Environment**
**(No Adverse Action)**

69.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.    Plaintiff is a member of a protected class on the basis of her race under Title VII and the FCRA.

71.    At all times material herein, Plaintiff was employed by Defendant and Defendant was an "employer" within the meaning of Title VII and the FCRA.

72.    As her employer, Defendant was obligated to guard against the harassment of Plaintiff by her subordinates, co-workers, supervisors, managers, and other persons and to protect Plaintiff from harassment in the workplace.

73.    As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, at all times material herein, Plaintiff's supervisors and managers, including Mr. Billingsley (White) and Ms. McCrimmon (White), harassed and discriminated against Plaintiff because of her race (African American/Black).

74.    The harassment of Plaintiff by her supervisors and managers was so frequent and severe that it created a hostile work environment for Plaintiff. Plaintiff did not welcome the harassment, nor did she directly or indirectly invite or solicit the harassment by her own acts or statements.

75.    The actions of Defendant, by and through its employees, supervisors, managers, and agents, more particularly described in the "GENERAL ALLEGATIONS" section hereinabove, constituted unlawful discrimination on the basis of race. Defendant tolerated and condoned this discriminatory environment that was inflicted upon Plaintiff.

76.    The offensive acts and statements of Plaintiff's supervisors and managers, more particularly described herein above, were so severe and pervasive that they materially altered the terms and conditions of Plaintiff's employment.

77.  Plaintiff believed that the offensive acts and statements of her supervisors and managers, more particularly described herein above, materially altered the terms and conditions of her employment. Further, a reasonable person would have found that these offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

78.  At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the harassment of Plaintiff by her supervisors and managers but did not take prompt remedial action to eliminate the hostile work environment.

79.  Further, Defendant failed to prevent and promptly correct this illegal workplace harassment. Defendant's management personnel who learned about the objectionable workplace conduct and harassment of Plaintiff failed to promptly take steps to correct the conduct of its employees, supervisors, and managers, who, like Plaintiff, was under their supervision, management and control.

80.  Defendant violated Title VII and the FCRA by subjecting Plaintiff, an African American/Black employee, to harassment and a hostile work environment because of her race and by failing to promptly correct the harassment once it learned of it.

81.  Plaintiff, by being subjected to this harassment and hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

82.  Moreover, as more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, Defendant, by and through the conduct of its employees, supervisors, managers, and agents, took tangible, adverse employment actions against Plaintiff.

83.  The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt

and effective investigative and remedial action to prevent the harassment of Plaintiff, deprived her of statutory rights under Title VII and the FCRA.

84. The actions of Defendant, by and through its employees, supervisors, managers, and agents, were willful, wanton, intentional and with malice or reckless indifference to Plaintiff's federal- and state-protected rights, entitling Plaintiff to compensatory and punitive damages to punish Defendant for its actions and to deter it and others from such action in the future.

85. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII and the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other non-pecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, LOUEMMA CROMITY, respectfully demands judgment in her favor and against the Defendant, CITY OF ORLANDO, for any and all damages available under Title VII and the FCRA, including, but not limited to, the damages set forth above, front pay in lieu of reinstatement, back pay, compensatory damages, prejudgment interest, attorneys' fees, and costs of this action, and such other relief as this Honorable Court deems just and proper.

## COUNT II
### VIOLATION OF TITLE VII/FCRA - RACE DISCRIMINATION
### Disparate Treatment, Wrongful Termination
### (Adverse Action)

86. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 68 of this Complaint as though fully set forth herein.

87.   Plaintiff is a member of a protected class on the basis of her race (African American/Black) under both Title VII and the FCRA.

88.   As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, Plaintiff was qualified for the position or otherwise met her employer's legitimate performance expectations.

89.   As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, Plaintiff suffered several adverse employment actions, including, but not limited to, being placed on a PIP, Termination, refusal to reinstate to prior position (demotion), and constructive discharge.

90.   As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, during her employment, and at all times material herein, Plaintiff was subjected to disparate treatment based on her race.

91.   As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, during her employment, and at all times material herein, Plaintiff (African American/Black) was treated less favorably than similarly situated employees outside of her protected class (White).

92.   As more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove, Plaintiff complained to her supervisors and managers about the discriminatory treatment.

93.   Defendant did nothing to resolve her complaints of discrimination.

94.   The actions of Defendant, by and through its employees, supervisors, managers, and agents, make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

95.   As a direct, proximate and foreseeable result of Defendant's conduct, Plaintiff has suffered

past and future pecuniary losses, emotional pain, suffering, inconvenience and mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, LOUEMMA CROMITY, respectfully demands judgment in her favor and against the Defendant, CITY OF ORLANDO, for any and all damages available under Title VII and the FCRA, including, but not limited to, the damages set forth above, front pay in lieu of reinstatement, back pay, compensatory damages, prejudgment interest, attorneys' fees, and costs of this action, and such other relief as this Honorable Court deems just and proper.

<u>**COUNT III**</u>
**VIOLATION OF TITLE VII/FCRA – RETALIATION**
**(Adverse Actions)**

96.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 68 of this Complaint as though fully set forth herein.

97.    Plaintiff is a member of a protected class on the basis of her race (African American/Black) under both Title VII and the FCRA.

98.    As an employee of Defendant, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected expression or activity under both Title VII and the FCRA.

99.    Plaintiff engaged in protected expression or activity when she, in good faith, made complaints to her supervisors, managers, and other agents of Defendant regarding the unlawful harassment, discrimination, and hostile work environment that she endured as more particularly alleged in the "GENERAL ALLEGATIONS" section hereinabove.

100.    In opposing the harassment and discriminatory behavior, Plaintiff had a good faith, reasonable belief that she had been or was being subjected to unlawful harassment, discrimination, and a hostile work environment. At all times material herein, Plaintiff acted in good faith and with the

objective and subjective belief that violations by Defendant's supervisors, managers, employees, and agents of both Title VII and the FCRA had occurred. As such, Plaintiff engaged in statutorily protected activity within the meaning of both Title VII and the FCRA.

101.   By the conduct alleged hereinabove, Defendant engaged in unlawful employment practices and retaliated against Plaintiff because she complained about the unlawful harassment and other discriminatory treatment and engaged in this statutorily protected expression or activity.

102.   On or around November 20, 2020, in response to Plaintiff's statutorily protected expression and activity, Defendant, by and through its employees, supervisors, managers and agents, including, but not limited to, Ms. Banks and Mr. Billingsley, terminated Plaintiff's employment.

103.   By placing the Plaintiff on a PIP, forcing her to work remotely, terminating her employment, demoting her employment and constructively discharging the Plaintiff from her employment, Defendant, by and through its employees, supervisors, managers and agents, subjected Plaintiff to a materially adverse employment action in that such action constituted an ultimate employment decision, altered the terms, conditions and/or privileges of Plaintiff's employment, and adversely affected her status as an employee.

104.   Further, this retaliatory act was and is reasonably likely to deter employees from engaging in protected activity. As such, this retaliatory act constitutes an adverse employment action for the purposes of both Title VII and the FCRA.

105.   Defendant, through its employees, supervisors, managers, and agents, was aware of Plaintiff's statutorily protected expressions and activities when it subjected her to adverse employment actions. More specifically, Plaintiff was subjected to this adverse employment action after she engaged in statutorily protected expressions and activities.

106.    Plaintiff's protected expressions and activities were a motivating factor in this adverse employment action. This adverse employment action was taken because of Plaintiff's statutorily protected expressions and activities.

107.    In taking this adverse employment action against her, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of her employment.

108.    By and through the acts alleged herein, Defendant intentionally discriminated against Plaintiff for engaging in statutorily protected activity under Title VII and FCRA.

109.    At all times material herein, Defendant allowed the unfair and unlawful harassment and discriminatory practices about which Plaintiff complained to continue in the work environment.

110.    At all times material herein, the unlawful harassment and discrimination by Defendant's employees, supervisors, managers, and agents against Plaintiff in the terms, conditions, and privileges of her employment were because she opposed one or more practices made unlawful by both Title VII and the FCRA, which would not have occurred but for that opposition.

111.    Defendant engaged in unlawful employment practice prohibited by Title VII and the FCRA by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

112.    As a direct and proximate result of Plaintiff's complaints to Defendant, and its employees, supervisors, managers, and other agents identified hereinabove, regarding the unlawful harassment, discrimination, and hostile work environment that she endured, and because of her engagement in these protected expressions and activities, Defendant, by and through

its employees, supervisors, managers, and agents, took the aforementioned adverse employment action against Plaintiff.

113.  Defendant violated both Title VII and the FCRA by retaliating against Plaintiff for complaining about the unlawful harassment, discriminatory treatment, and hostile work environment that she endured because and for her engagement in these protected expressions and activities, with such conduct constituting unlawful employment practices prohibited under both Title VII and FCRA.

114.  At all times material herein, Defendant's employees, supervisors, managers, and agents acted intentionally and with a reckless disregard of Plaintiff's rights protected by Title VII and the FCRA.

115.  At all times material herein, Defendant employer exhibited discriminatory conduct against Plaintiff, possessed the authority to affect the terms, conditions and privileges of her employment with Defendant.

116.  A legitimate, non-discriminatory, or non-retaliatory reason does not exist to justify Defendant's intentional discriminatory and retaliatory treatment of Plaintiff.

117.  The retaliatory and discriminatory conduct of Defendant, through its employees, supervisors, managers, and agents, against Plaintiff resulting from her engagement in statutorily protected activity under Title VII and the FCRA as alleged herein has caused, continues to cause, and will cause Plaintiff to suffer substantial damages.

118.  As a direct, proximate and foreseeable result of Defendant's aforementioned retaliatory action and violations of Title VII and the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering,

mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other non-pecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, LOUEMMA CROMITY, respectfully demands judgment in her favor and against the Defendant, CITY OF ORLANDO, for any and all damages available under Title VII and the FCRA, including, but not limited to, the damages set forth above, front pay in lieu of reinstatement, back pay, compensatory damages, prejudgment interest, attorneys' fees, and costs of this action, and such other relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

119.   Plaintiff hereby demands trial by jury on all issues so triable as of right by jury in this matter.

Respectfully submitted this 19th day of May, 2022.

By: /s/ Frank M. Malatesta, Esq.
FRANK M. MALATESTA, ESQUIRE
Florida Bar No.: 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Boulevard, Suite 235
Venice, Florida 34285
Telephone No.: (941) 256-3812
Facsimile No.: (888) 501-3865
Frank@malatestalawoffice.com
Staff@malatestalawoffice.com
*Counsel for Plaintiff*