**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LOUEMMA CROMITY,
     Plaintiff,

v.                    Case No. 6:22-cv-924-CEM-EJK

CITY OF ORLANDO,
     Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**SUPPORTING MEMORANDUM OF LAW**

Defendant, CITY OF ORLANDO (the "City"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 3.01, hereby moves this Honorable Court to enter judgment as a matter of law against Plaintiff, LOUEMMA CROMITY, and in support thereof states as follows:

**MEMORANDUM OF LAW**

**I.**     **INTRODUCTION**

Plaintiff was employed by the City as the Assistant Chief Procurement Officer, a supervisory position with 10-12 direct reports. She was terminated due to repeated and significant abuse of her subordinates, even after her managers spent considerable time coaching her to try to improve her interpersonal and managerial skills. Plaintiff has asserted claims of race discrimination under both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and the Florida Civil Rights Act,

**1**

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

Chapter 760, Florida Statutes ("FCRA"), by way of her three (3) count Complaint. Count I alleges claims of harassment and hostile work environment; Count II alleges claims of disparate treatment and wrongful termination; and, Count III alleges retaliation.

To support her claims, Plaintiff alleges she was harassed by her supervisors, David Billingsley, Chief Procurement Officer, and Michelle McCrimmon, Deputy Chief Financial Officer, because they attempted to coach her. Plaintiff also alleges she was discriminated and retaliated against when she was terminated after her abusive management style did not improve and when she was demoted after her termination was overturned for lesser discipline by the Grievance Board.

Plaintiff was hired in December 2018 and just a few months later her subordinates began complaining about her abusive and condescending management style. By June 2019, three (3) of Plaintiff's 10-12 subordinates had complained about Plaintiff and one (1) of those subordinates resigned specifically because of Plaintiff's abuse. Plaintiff was subsequently placed on a Performance Improvement Plan (PIP) on May 29, 2020, in an attempt to correct her behavior and help her succeed. Plaintiff refused to accept any responsibility for her actions and repeatedly claimed her staff was at fault and that the PIP was issued because of her race. Plaintiff's managerial misconduct and employee complaints continued even after she completed the PIP (she was sustained for

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

nine (9) instances of misconduct that occurred after the PIP), ultimately necessitating her termination.

Defendant respectfully submits that summary judgment should be entered in favor of the City as to all three (3) counts because the City's actions were for legitimate, nondiscriminatory reasons and were not pretextual, nor were the City's actions retaliatory.

## II.   **STATEMENT OF FACTS**

1.   Plaintiff began working with the City as the Assistant Chief Procurement Officer in December 2018. Deposition of Plaintiff taken on May 25, 2023, attached as Exhibit A to the Notice of Filing Exhibits in Support of Motion for Summary Judgment ("Pl.'s Dep.") at 50:13-14.

2.   Plaintiff was hired by Chief Procurement Officer David Billingsley, whom she had known and worked with in a professional organization for many years prior to her employment with the City. Pl.'s Dep. at 48:5 – 20. Obviously, Billingsley knew Plaintiff was Black when he hired her and when he later terminated her. Pl.'s Dep. at 48:17-18. Thus, the City is entitled to the same-actor defense.

3.   On June 27, 2019, just a few months after Plaintiff was hired, Maureen Bowman, one of Plaintiff's 10-12 subordinates, resigned due to Plaintiff's abusive conduct. Pl.'s Dep. at 51:6-53:12, Ex. 3; *see also* deposition of David Billingsley taken on June 1, 2023 and attached as Exhibit B to the Notice

of Filing Exhibits in Support of Motion for Summary Judgment at 17:23-19:13 ("Billingsley Dep."), and Declaration of David Billingsley dated July 3, 2023 attached as Exhibit C to the Notice of Filing ("Billingsley Declaration"). Bowman was offended after being "belittled" by Plaintiff by being "called an 'Average Joe' with 'no knowledge…'" Pl.'s Dep. at Ex. 3. Bowman stated in her resignation letter: "I would also like to request, in writing, that during the balance of my time here at the City, that I do not have any interactions with [Plaintiff]" Pl.'s Dep. at Ex. 3; *see also* Billingsley's Dep. at 17:23-18:21.

4.    Shortly thereafter, in October 2019, Fabio Henao, Silvia Coste, Angie Thomas, and Brian Ferrier complained to Human Resources about Plaintiff's "disrespectful treatment." Pl.'s Dep. at Ex. 7.

5.    On October 7, 2019, Henao complained about Plaintiff: 1) making offensive comments regarding his "broken English;" 2) commenting "I [Plaintiff] would never hire him [Henao];" and, 3) belittling his qualifications by saying, "you just bought that Certification," and by saying, "you all do it wrong here at the City… even a high school kid could do what you guys do here." *Id.* at 56:15-57:24, Ex. 5. Henao resigned just a few months later in January 2020 and informed the City's Deputy Chief Financial Officer, Michelle McCrimmon, that it was due to Plaintiff's disrespectful treatment which also included: 1) being called into a conference room, being instructed by Plaintiff to point at an organizational chart and being told to state that he reported to

Plaintiff; and, 2) an overall feeling of being treated disrespectfully by Plaintiff during work interactions. *Id.* at 60:14-16, Ex. 7.

6.    Billingsley provided Plaintiff with coaching after Henao's resignation. Billingsley's Dep. at 23:12-17.

7.    In October 2019, Coste complained about Plaintiff's abusive conduct after she emailed Plaintiff a question and Plaintiff replied with, "Stop with your emails. I am not your co-worker, I am your manager. You have a lot to learn about Business Acumen, Office Protocol, and a host of other professional etiquettes." Pl.'s Dep. at Ex. 6.

8.    Around December 2019, McCrimmon took over supervision of the Procurement division. Deposition of Michelle McCrimmon taken on June 3, 2023, attached as Exhibit D to the Notice of Filing Exhibits in Support of Motion for Summary Judgment ("McCrimmon Dep.") at 8:1-12. In January 2020, McCrimmon became aware of the aforementioned complaints and learned that Henao resigned due to Plaintiff's abusive conduct[1]. *Id.* at 9:18-10:23. Because of the complaints in January 2020 McCrimmon met with Plaintiff and advised that Henao resigned due to Plaintiff's abusive conduct and

---

[1] In addition to complaints from her subordinates, City employees from other departments, Matt Broffman, Director of Innovation, and David Dunn, Facilities Management Division Manager, also complained about Plaintiff's disrespectful communications to them. Pl.'s Dep. at 104:9 – 16, Ex. 18. Thus, Plaintiff's assertion that complaints about her were somehow contrived by her staff lacks merit.

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION
SPDN-868764429-3254886

suggested follow up informal meeting with Plaintiff as informal coaching sessions. *Id.* at 9:16-10:12.

9.    Subsequently, there were additional complaints from Plaintiff's subordinates: (1) Cindy Jordan complained in January 2020 that Plaintiff raised her voice at her during a meeting and later commented to her that the City wanted to "get rid of the old-timers;"  (2) Thomas complained in February 2020 about "overall decline in morale" due to "poor treatment by [Plaintiff] of staff;" and, (3) Karen Elzy complained in February, March, and again in May 2020 that Plaintiff was "stress[ing] her out." *Id*. at Ex. 7, 8. The volume of these complaints is significant considering that Plaintiff only had 10-12 subordinates. Billingsley's Declaration.

10.    McCrimmon met with Plaintiff on multiple occasions to provide coaching for Plaintiff's inappropriate behavior. McCrimmon Dep. at 12:4-9. These informal coaching sessions were not successful in correcting Plaintiff's behavior. *Id.* at 19:24-20:16. In March 2020, after it became apparent that Plaintiff was neither responding nor receptive to the coaching sessions by McCrimmon, Plaintiff's immediate supervisor, Billingsley, decided to place her on a Performance Improvement Plan ("PIP"). *Id*. at 19:24-20:16; *see also* Billingsley's Dep. at 86:3-87:1.

11.    Due to the pandemic, the PIP was not implemented until May 2020 and by then additional complaints were received:

a.    May 7, 2020 - Thomas emailed Billingsley saying that Plaintiff's "abuse has to stop" and complaining about Plaintiff's lack of organization. Pl.'s Dep. at 90:15-91:1, Ex. 10;

b.    May 7, 2020, Jordan complained to Billingsley that Plaintiff was late to a meeting and made the City appear unprofessional in front of vendors. *Id.* at Ex. 8.;

c.    May 20, 2020 - Thomas complained that Plaintiff unprofessionally took over a meeting. *Id.* at Ex. 8;

d.    May 20, 2020 - Elzy complained to Billingsley about a "very upsetting" interaction with Plaintiff. *Id.* at 86:1-25, 89:1-20, 95:1-25, Ex. 9; and,

e.    May 20, 2020 - Thomas complained about Plaintiff threatening to dock her pay after Plaintiff became frustrated when Thomas did not return her call within approximately 19 minutes and attempted to force Thomas to take paid time off for taking phone calls from her doctor while working. *Id.* at 93:1-15, 97:24-98:16, 93:1-14, Ex. 13, Ex. 14. This was overruled by Billingsley. *Id.* at 95:6-18, Ex. 14.

12.    The PIP explicitly instructed Plaintiff: "When working with procurement staff, ensure the overall tone is professional, genuine and positive. You are looked to as a leader." *Id.* at 111:13-17, Ex. 19.  The PIP was non-disciplinary. Deposition of Lynne Banks taken on May 18, 2023, attached as

Exhibit E to the Notice of Filing Exhibits in Support of Motion for Summary Judgment ("Banks Dep.") at 25:9-23.

13.    Although Plaintiff successfully completed the PIP, her inappropriate behavior resumed by November 2020 when Labor Relations received a complaint from another subordinate, Yonney Dominguez. Pl.'s Dep. at 169:12-17, Ex. 32. Dominguez reported serious allegations against Plaintiff, including that she: a) instructed Dominguez and other subordinates that they must report complaints directly to her and not Billingsley; b) made statements that she "knows how to get rid of union employees" when all of her subordinates were union members; c) informed Dominguez that his probationary period was being extended because Billingsley and McCrimmon were discriminating against him; d) informed Dominguez that Billingsley and McCrimmon were discriminating against Plaintiff; and, e) belittled another subordinate (Tracie Mills) insulting her education and saying that where she was enrolled was "basically trash." Banks Dep. at 88:4-9, 97:24-98:18, 133:2-9, Def. Composite Ex. 1; *see also* Billingsley Dep. at 61:7-20.

14.    Following an investigation into Dominguez' complaints, the following nine (9) of the allegations of misconduct were substantiated against Plaintiff:

a.    instructed her subordinates to report issues to her instead of Billingsley;

b.      told her subordinates that Billingsley and M McCrimmon were discriminating against her;

c.      "corrected" (disciplined) employees in front of other employees;

d.      regularly spoke negatively about her supervisor, Billingsley, and said that Billingsley "got his position as a favor to his brother from the Mayor;"

e.      told other employees that she believed she was being discriminated against;

f.      referred to certain employees as "legacy" employees in a negative manner;

g.      disparaged other departments within the City; and,

h.      claimed that she "knew how to get rid of union employees" when all of her employees were union members.

Banks' Dep. at Pl.'s Ex. 6. As a result, and given "that [Plaintiff had] completed a [PIP] for similar behavior," Banks recommended her termination. *Id.*

15.    Ultimately Billingsley, the same individual who hired Plaintiff, made the decision to terminate Plaintiff on November 19, 2020[2]. Billingsley Dep. at 87:7-25. Specifically, Billingsley testified that:

---

[2] Plaintiff has a history of staff complaints and Plaintiff asserting that the staff (and not Plaintiff herself) were the problem. She was sent to counseling by the Pinellas Suncoast Transit authority for "behavior issues and treatment of her staff." Pl.'s Dep. at 185:20-186:7, Ex. 43. It was further documented by Pinellas that Plaintiff "perceives herself as compassionate, fun, knowledgeable, expert, persecuted," yet her staff were having "difficulty dealing with

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

SPDN-868764429-3254886

it was very clear, obviously clear, that performance was not improving, was not changing, and after so many complaints it was time it take that step…

*Id.* at 88:4-7.

16.    On November 20, 2020, Plaintiff received a memorandum terminating her employment and stating that she: 1) failed to behave in the manner outlined by the PIP ; and 2) engaged in abusive language or threatening behavior towards a fellow employee or supervisor. Banks' Dep. at Pl.'s Ex. 4.

17.    Plaintiff grieved her termination and at Step 4 of the grievance process, on April 23, 2021, the Grievance Board (the "Board") overturned Plaintiff's termination despite finding she abused her subordinate. Billingsley's Dep. at Ex. 4. The Board's decision was silent on the appropriate discipline. *Id.*[3]

_____

[Plaintiff] yelling and screaming" and were "concerned about [Plaintiff's] inappropriate comments." *Id.* at 193:7-19, Ex. 46. Additionally, while employed by Orlando Utilities Commission ("OUC"), she was placed on an "Action Plan/Job Shadowing" after an annual review found her communication skills needed improvement, yet continually "re-state[d] that [she did] not have communication [*sic*] problem..." *Id.* at 200:4-201:23, Ex. 52. Plaintiff also had similar issues while employed by the City of Casselberry, which documented that Plaintiff's "Attitude Toward Other Employees" was "surly, touchy, quarrelsome," and "does not cooperate," yet Plaintiff insisted that "[her] attitude toward other employees is exemplary." *Id.* at 206:18-207:22, Ex. 53. Finally, while employed by Lynx, Plaintiff was disciplined for "display[ing] unprofessional behavior by calling other employees liars, refusing to listen to them any further and verbally attacking them." *Id.* at 210:7-18, Ex. 53.

[3] Plaintiff will likely argue that the Board's decision supports her claims, but the decision was flawed on multiple bases and is irrelevant in this suit. While the Grievance Board decision is referenced herein for background, the City objects to its admissibility at trial because the Grievance Board did not consider whether Plaintiff was discriminated against as alleged in this suit. Instead, the issue was whether there had been progressive discipline. Despite finding Plaintiff abused her subordinates, the Board erroneously found a policy violation based on a failure to follow progressive discipline which is not required by Policy since abuse of employees is a dischargeable offense. Banks' Dep. at 34:16–25. Additionally, the Board's decision was flawed on multiple bases. For example the Board improperly required that unrebutted testimony be substantiated through a "voluntary lie detector test." Deposition of

18.     Plaintiff's former position of Assistant Chief Procurement Officer had been eliminated prior to the Board's decision. *Id.* at 91:24-92:6. Since the Board did not speak to discipline but did find a violation and the Board's decision is final, the City offered Plaintiff reinstatement to the position of Purchasing Agent III, a two-level demotion, because there was not an open position in a one-level demotion available at the time of the offered reinstatement. *Id.* at 91:1-8. However, Plaintiff did not accept the position and resigned. May 17, 2021 email from Billingsley accepting Plaintiff's resignation attached as Exhibit H to the Notice of Filing Exhibits in Support of Motion for Summary Judgment.

19.     Plaintiff has only identified the following purported comparators: (1) Tara Culver, Assistant Comptroller; (2) Katrina Laudeman, Treasurer; (3) Angela "Angie" Thomas, Purchasing Agent III; (4) David Dunn, Facilities Management Division Manager; and (5) Rosa Akhtarkhadari," Deputy Chief Financial Officer (Plaintiff could not identify Rosa's last name). Pl.'s Dep. at 29:8-10, 93:1-20, 118:22-119:4.

20.     These purported comparators are not similarly situated because they did not hold the same position as Plaintiff (Assistant Chief Procurement Officer) nor did they engage in misconduct similar to Plaintiff's. Declaration of

---

Kevin Edmonds Chief Administrative Officer taken on May 23, 2023, attached as Exhibit F to the Notice of Filing Exhibits in Support of Motion for Summary Judgment at 12:3–12.12; *see also* Edmonds' April 27, 2021 memorandum addressing the multiple errors with the Board's decision attached as Exhibit G to the Notice of Filing.

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

Lynne Banks dated July 5, 2023, attached as Exhibit I to the Notice of Filing Exhibits in Support of Motion for Summary Judgment.

21.    The only individual Plaintiff identified as treating her in a discriminatory manner is McCrimmon, whom according to Plaintiff is "a racist" because:

> She told me that – she called me a liar. She told me that – that I was flawed, that I needed to look inside myself and see what's wrong with me. She told me that I was the – there was nothing wrong with the staff, it was me. And then she accused me of – not following David's – no. She accused me of not doing what David wanted me to do, and a lot of other stuff, and her demeanor and her disdained look that she had for me and just a lot of stuff that was really uncomfortable.

Pl.'s Dep. at 72:5 – 14.

22.    Plaintiff also claimed that McCrimmon told her she was "being maybe aggressive with staff…" *Id.* at 131:9-14. Plaintiff claimed that is a racist comment because "[i]t's all built around the stereotype for Black women that we're hostile, that we're overbearing, that we are, you know, whatever the whole context is." *Id.* at 131:18-22. Plaintiff's conclusory basis for this statement was: "[b]ecause that is how that is has been – Black women have been treated." Pl.'s Dep. at 131:23-25. However, Plaintiff conceded that she "ha[s] not researched it…" and does not have any evidence or data to support this claim and that McCrimmon never called her a racial slur. *Id.* at 132:8-10, 133:19-22.

23.    Plaintiff raised the alleged discrimination in an email on June 4, 2020, just days after the PIP was issued on May 29, 2020. *Id.*, Ex. 9; Banks' Dep. at 13:20-14:8,. However, her email did not contain any specific facts

concerning the nature of the alleged discrimination. Banks' Dep. at 15:2-7; *see also* Pl.'s Dep. at Ex. 26.

24.    The City attempted to investigate Plaintiff's complaint, but she refused to meet with Labor Relations to provide sufficient details for Labor Relations to investigate her allegations. Banks' Dep. at 15:8-21, 107:10-18. According to Plaintiff, she "did not meet with [Labor Relations]… because [she] did not have any trust that they were going to investigate." Pl.'s Dep. at 152:21-153:1.

25.    Finally, as it pertains to Plaintiff's claim of harassment and hostile work environment based on her race, Plaintiff's only alleged harassment is by McCrimmon, whom she claims harassed her because she: a) walked by Plaintiff's desk "several" time;. b) told Plaintiff to "look inside herself;."; c) told Plaintiff that Plaintiff "was not telling the truth because she (Ms. McCrimmon) knows the staff" when Plaintiff attempted to respond to the staff's allegations of Plaintiff's abusive treatment; and d) told Plaintiff that "anybody can put anything on their resume" when Plaintiff attempted to justify her abusive treatment of the staff by telling Ms. McCrimmon about her background. *Id.* at 154:4-15, 155:20-24, 156:12-22, 157:11-15.

26.    Clearly, Plaintiff has not and cannot offer any evidence to support any of her claims of discrimination or retaliation, and the City had demonstrable legitimate, nondiscriminatory business reasons for its actions.

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

### III.    <u>ARGUMENT</u>

#### A. Legal Standard

Summary judgment should be granted if it appears through the pleadings, depositions, admissions, and affidavits that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of demonstrating the basis for its motion and the absence of evidence in support of the nonmoving party's case. *Northfield Ins. Co. v. Barlow*, 983 F.Supp. 1376, 1378 (N.D. Fla. 1997). If the moving party carries that burden, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact for trial. *Id.* However, "[w]here opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Consequently, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citations omitted). Plaintiff cannot meet that burden.

**14**

SPDN-868764429-3254886

**B. Analysis of FCRA and Title VII Claims[4]**

**C. Count I alleging Harassment and Hostile Work Environment due to Race Discrimination Fails because Plaintiff was not Harassed.**

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Cyprian v. Auburn Univ. Montgomery*, 799 F. Supp. 2d 1262, 1275 (M.D. Al. July 1, 2011) (internal citations omitted). To prevail on this claim, Plaintiff must prove that:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or of direct liability.

*Id*. at 1275 – 76. (internal citations omitted).

To establish that the harassment was severe or pervasive, Plaintiff must prove "not only that she subjectively perceived the working environment to be

---

[4] As a threshold matter, Plaintiff's Complaint asserts various claims of race discrimination and retaliation under both Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act ("FCRA"). "Claims under Title VII and the FCRA are analyzed under the same burden-shifting framework, and accordingly decisions construing Title VII are also applicable to claims under the FCRA." *Id*. Likewise, FCRA retaliation claims are analyzed the same as Title VII retaliation claims. *Reyes v. Fed. Express Corp.*, 2022 U.S. App. LEXIS 24437, *6 (11th Cir. 2022). Thus, the argument and analysis set forth below apply to both Plaintiff's Title VII and FCRA claims.

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION
SPDN-868764429-3254886

abusive but also that a reasonable person would view the environment as hostile and abusive." *Id.* (internal citations omitted). To evaluate whether the alleged harassment was objectively severe, the Court "must look at the totality of the circumstances and consider… (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (internal citations omitted).

The record is devoid of evidence that could possibly meet this high standard. There is no evidence that McCrimmon's actions were motivated by Plaintiff's race or that McCrimmon's or any other employee of the City's alleged conduct towards Plaintiff was physically threatening or humiliating. Further, there is no evidence that McCrimmon's or any other employee's alleged conduct interfered with Plaintiff's job performance. To the contrary, there is overwhelming evidence that McCrimmon's actions were instead motivated by the significant complaints the City received regarding Plaintiff's abusive treatment of her subordinates and McCrimmon's attempts to correct that behavior succeed in the Assistant Chief Procurement Officer position.

Nevertheless, even if Plaintiff's allegations are assumed to be true, the alleged harassment is insufficient to support her hostile work environment claim. See *Cyprian, supra*, (holding that referring to an African American employee as "Da Boy," commenting that "no African-American employee

should make $95,000," and an assistant receiving a note saying "we do not like blacks here" did not rise to the requisite level of severity to sustain a hostile work environment claim); *McMann v. Tillman*, 526 F.3d 1370 (11ᵗʰ Cir. 2005) (affirming summary judgment for the defendant on the basis that irregular comments such as "nigger bitch" overheard by the plaintiff over the course of several years were insufficient to establish a hostile work environment claim); *Barrow v. Ga. Pac. Corp.*, 144 Fed. Appx. 54 (11ᵗʰ Cir. 2005) (holding that racial slurs and offensive symbols were insufficient to support a hostile work environment claim where there was no evidence that the slurs and symbols were "sufficiently severe or pervasive to alert the conditions of [the plaintiff's] employment and create an abusive working environment").

There is no evidence that the harassment alleged by Plaintiff was racially motivated or that the harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's abuse. Therefore, the City respectfully submits it is entitled to summary judgment as to Count I.

### D.  Count II alleging Termination Fails because the City had Legitimate, Nondiscriminatory Reasons for Plaintiff's Termination and Plaintiff cannot Identify Comparators.

In order to prove her claims for disparate treatment based upon race, Plaintiff "must demonstrate that [the City] intentionally discriminated against [her] on the basis of [race]." *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016). Thus, "[t]he question in a disparate treatment case is

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

'whether the protected trait actually motivated the employer's decision.'" *Id.* at 1026, quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) "A plaintiff asserting a disparate treatment claim under Title VII must show that the defendant acted with discriminatory intent through direct or circumstantial evidence." *Davis v. Infinity Ins. Co.*, 2022 U.S. App. LEXIS 10456, *11 (11th Cir. 2022) (internal citations omitted). Direct evidence is evidence that proves a "discriminatory intent behind the employe decision without any inference or presumption." *Id.* Plaintiff has offered no such direct evidence.

Where, as here, a plaintiff cannot offer direct evidence, the plaintiff "may use circumstantial evidence to prove intentional discrimination through the *McDonnell Douglas* framework by showing that she was: (1) a member of a protected class, (2) subjected to an adverse employment action, (3) her employer treated similarly situated employees more favorably, and (4) she was qualified to do the job." *Id.* at *12. Plaintiff has not met this burden as Plaintiff has not identified any similarly situated employee that committed the same misconduct as Plaintiff who was treated more favorably than Plaintiff.

To determine whether other employees were similarly situated to Plaintiff, the court must "evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal citations omitted). Importantly, "the quantity and quality of the comparator's

**ALLEN, NORTON & BLUE, P.A.**
PROFESSIONAL ASSOCIATION

misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (internal citations omitted). Here, Plaintiff has not identified a single similarly situated comparator that was accused of the same or similar conduct she engaged in: that is, Plaintiff has not identified and cannot identify any other supervisor that had multiple subordinates allege a multitude of documented incidents of abusive, condescending, and disrespectful conduct that persisted even after the completion of a PIP that was not terminated like Plaintiff.

Plaintiff's purported comparators are: (a) Tara Culver, Assistant Comptroller; (b) Katrina Laudeman, Treasurer; (c) Angela "Angie" Thomas, Purchasing Agent III; (d) David Dunn, Facilities Management Division Manager; and, (e) Rosa Akhtarkhadari, Deputy Chief Financial Officer. These are not comparators. Thomas reported to Plaintiff and was her subordinate, and none of the other individuals identified reported to Billingsley. None of the individuals held the same position as Plaintiff. At the time of the alleged comparator conduct, Culver reported to Michelle McCrimmon. Further, Katrina Laudeman, Rosa Akhtarkhadari, and Davin Dunn are Division 5 managers appointed by the Mayor and serve at his pleasure. Plaintiff was a Program Manager, which is below the Division 5 Manager level and is a non-appointed position.

Moreover, Culver received oral coaching regarding failure to disclose she

SPDN-868764429-3254886

was a candidate for the position of Controller when she asked for a copy of the test to be given to candidates. There is no record of Culver ever abusing subordinates. There is also no record of Ms. Laudeman, Ms. Akhtarkhadari, or Dunn abusing subordinates. Finally, none of the above-named individuals were accused of abusing, threatening, and discriminating against employees or of similar misconduct as Plaintiff.

Even assuming Plaintiff could establish a prima facie case, the City is still entitled to summary judgment on this claim because the City's decision to terminate Plaintiff was based on legitimate, nondiscriminatory reasons: her ongoing abusive treatment of subordinates persisted even after a PIP. Likewise, the City's decision not to reinstate Plaintiff to a supervisory position after the Board's decision (which did not require reinstatement to her position of Assistant Chief Procurement Officer) was based on a legitimate, nondiscriminatory business purpose: her former position of Assistant Chief Procurement Officer had been eliminated and she should not be in a position that supervises employees. See *Barthlow v. Jett*, 303 Fed. Appx. 723, 724 (11th Cir. 2008) (finding an employer had a "clear… legitimate reason for firing" an employee where the "record [was] replete with evidence" that the employee "had an extensive history of reprimands for unprofessional conduct"); see also *Jefferson v. Burger King Corp.* 505 Fed. Appx. 830 (11th Cir. 2013) <u>cert denied</u> 133 S. Ct. 2352 (2013), (employee complaints about Plaintiff's abusive language and

inappropriate behavior were legitimate non-discriminatory reasons to terminate), *Willis v. Walmart Assoc.* 592 F. Supp. 3d 1203, 1235 (11th Cir. 2022), (terminating employee because he had been abusive to his coworkers, discriminated against female associate, and threatened his associates as a way of preventing them from complaining to his supervisors), citing:

> *Vahey v. Philips Elecs. N. Am. Corp.*. 461 F. A 'x 873, 875 (11th Cir. 2012) (finding a legitimate, non- discriminatory reason based on "repeated complaints from [the plaintiffs] subordinates about [the plaintiffs] condescending and aggressive managerial style"); *Barthlow v. Jett*. 303 F. App'x 723, 724 (11th Cir. 2008) (finding it "clear that [the employer] had a legitimate reason for firing [the plaintiff]" because the plaintiff's "file contain[ed] numerous reprimands for abusive and harassing incidents with co-workers"); *Hankins v. AirTran Airways*, Inc., 237 F. App'x 513. 523 (11th Cir. 2007) (finding a legitimate, non-discriminatory reason where the plaintiff-while trying to make a joke-was found to have "verbally abus[ed] her co-worker"); *Gaston v. Home Depot USA, Inc.* 129 F. Supp. 2d 1355. 1372 (S.D. Fla. 2001) (Gold, J.) ("It is beyond question that an inability to get along with co-workers and demonstrated caustic or rude behavior is a legitimate, nondiscriminatory reason for an employment decision." (quoting *Garcia-Cabrera v. Cohen*. 81 F. Supp. 2d 1272, 1280-81 (M.D. Ala. 2000))).

See also *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355 (S.D. Fla. Jan. 30, 2001) (granting summary judgment in favor of the defendant on race discrimination claims on the basis that the employer had  legitimate, nondiscriminatory reasons for terminating an African American supervisor due to ongoing subordinate complaints about the supervisor's disrespectful and abusive management style), *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

an employer has offered…" evidence that the employee was terminated for sexually harassing other employees as the employer's nondiscriminatory reasons for its actions).

Because the City has a legitimate, nondiscriminatory reason for its actions, the burden shifts to Plaintiff to prove that the City's stated reason is pretextual. *Id.* at *11. Plaintiff has not and cannot offer any evidence to demonstrate that the City's stated reason is pretextual and, therefore, her disparate treatment claim fails. Accordingly, the City respectfully submits it is entitled to summary judgment on this claim.

**E. Count III Fails because there is no Causal Connection between the Protected Activity and Adverse Employment Action, and because the City had Legitimate, Nondiscriminatory Reasons for the Adverse Employment Action.**

"Title VII's retaliation provision prohibits an employer from retaliating against an employee..." *Reyes v. Fed. Express Corp.*, 2022 U.S. App. LEXIS 24437, *10 – 11 (11th Cir. 2022). "Title VII retaliation claims are also analyzed under the *McDonnell Douglas* framework." *Id.* (internal citations omitted). Under the *McDonnell Douglas* framework, to establish a prima facie case, a plaintiff must show: "(1) [s]he was engaged in statutorily protected activity, (2) [s]he suffered a materially adverse action, and (3) there was a causal connection between the two events." *Id.*

Plaintiff has not and cannot offer any evidence to establish the requisite causal connection between the adverse action and her protected activity. The

22

**ALLEN, NORTON & BLUE, P.A.**
PROFESSIONAL ASSOCIATION

City's actions to place Plaintiff on a non-disciplinary PIP, to terminate Plaintiff, and subsequently to demote Plaintiff after the Board's decision (which did not require reinstatement), were based on Plaintiff's repeated misconduct and mistreatment of her subordinates. Moreover, Plaintiff's protected activity (her email alleging discrimination) was sent in June 2020, and the intervening event, Dominguez's complaints, were sent to the City in November 2020, five (5) months apart. Mere temporal proximity without more, must be "very close" *Thomas v. Cooper Lighting, Inc.* 506 F.3d. 136 (11th Cir. 2007) quoting:

> "Therein the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law. *See. Higdon v. Jackson* 393 F. 3d. 1211, 1220 (11th Cir. 2004) citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001)."

*See also, Brown Ala. DOT,* 597 F. 3d 1160, 1182 (11th DCA 2010). Plaintiff has not and cannot present any other evidence tending to show causation. Further, Plaintiff has not and cannot provide any evidence to suggest that the City's reasons for its actions were pretextual. See *Reyes, supra*, (affirming summary judgment in favor of the employer where the employer provided evidence it terminated the employee for misconduct and, therefore, that the termination was not retaliatory); *Gray v. City of Jacksonville*, 492 Fed. Appx. 1 (11th Cir. 2012) (affirming summary judgment in favor of the defendant where there was no causal relationship between the protected activity and the adverse employment

actions). Thus, the City is entitled to summary judgment on Plaintiff's retaliation claims.

## IV.    **CONCLUSION**

Plaintiff's former position at the City of Orlando as Assistant Chief Procurement Officer was a managerial position. Very shortly after Plaintiff's employment began, her subordinates began complaining about her abusive, disrespectful, and condescending managerial actions. At least two (2) employees resigned due to Plaintiff's inappropriate behavior. The City placed Plaintiff on a non-disciplinary PIP to attempt to improve her managerial skills, but her behavior persisted and, arguably, worsened thereafter. The City's actions with respect to placing Plaintiff on the PIP, terminating Plaintiff, subsequently demoting Plaintiff after the Grievance Board decision, and in all other aspects of Plaintiff's employment, were based on documented legitimate, nondiscriminatory business reasons and were irrespective of Plaintiff's race, protected activity, or any other protected status. Therefore, her claims of discrimination and retaliation fail, and the City is entitled to summary judgment.

WHEREFORE, Defendant respectfully requests that this Court grant Defendant's Motion for Summary Judgment.

Dated: July 5, 2023                    Respectfully submitted,


                                   /s/ Susan Potter Norton

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

SPDN-868764429-3254886

Susan Potter Norton
Florida Bar No. 201847
snorton@anblaw.com
pleadings@anblaw.com
John W. Keller, IV
Florida Bar No. 119542
**Allen Norton & Blue, P.A.**
121 Majorca Avenue, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2023, a true and correct copy of the foregoing was sent via electronic mail to: Frank M. Malatesta, Esq., Malatesta Law Office, 871 Venetia Bay Blvd., Suite 235, Venice, FL 34285, Phone: (941) 246-3812, Fax: (888) 501- 6612, frank@malatestalawoffice.com, staff@malatestalawoffice.com

*/s/ Susan Potter Norton*
Attorney

**25**

SPDN-868764429-3254886